GEORGE H. DOHERTY, RELATOR, v. ARTHUR J. SPITZ-NAGLE, DEFENDANT.

Submitted May 13, 1927—Decided November 23, 1927.

Before GUMMERE, CHIEF JUSTICE, and Justices BLACK and LLOYD.

For the relator, *John W. Ockford.*

For the defendant, *William C. Asper.*

The opinion of the court was delivered by

BLACK, J.   The precise point for solution involved in this case seems to be, as the act *Pamph. L.* 1908, *pp.* 303, 367, § 119, requires its adoption by a vote of the people before it becomes operative, can the legislature make this act applicable to consolidated municipalities without a direct referendum?   Are the acts *Pamph. L.* 1927, *pp.* 40, 48, 50, which produce this result, constitutional?   These questions must be answered in the affirmative.   This, in turn, involves the practical question whether the relator, George H. Doherty, is the legal clerk of Union City, who was appointed by the common council under the act *Pamph. L.* 1908, *p.* 303, or whether Arthur J. Spitznagle is the legal clerk, who was appointed by the mayor, under the act *Pamph. L.* 1927, *p.* 40.   The question is raised by a demurrer to the defendant's plea.   This controversy grows out of three acts of the legislature passed in 1927, to wit, *Pamph. L.* 1927, *p.* 40, *p.* 48 and *p.* 50.   All three acts refer to the act *Pamph. L.* 1908, *p.* 303.   The first act amends the act 1908.   The second repeals designated sections of the act of 1908, but not section 119, which is the referendum section.   The third is a supplement to the act of 1908.   The relator's term of office as clerk of Union City was terminated by the third act.   *Pamph. L.* 1927, *p.* 50.

The point is made that these three acts are not applicable to Union City.   Not so.   But if they are applicable, then, it is argued, the acts are unconstitutional under act 4, section 7, paragraph 11 of the state constitution, which provides that no private, local or special laws shall be passed "regulating the internal affairs of towns and counties; appointing local officers or commissions to regulate municipal affairs."

The argument is, these acts are special laws regulating the internal affairs of municipalities, because they affect only certain municipalities depending upon their form of government, thereby creating a double and illegal classification.   It will be observed, the three acts of 1927 are all general in form.

A sketch of the course of legislation, applicable to the situation, is essential to make clear the points raised.

Thus, the act *Pamph. L.* 1908, *p.* 303, is a general act relating to cities, all cities of the state that may adopt its provisions, but section 119 of the act provides that it shall remain inoperative in any city in the state, until assented to by a majority of the legal voters of a city at an election.

Union City was a consolidation of West Hoboken and the Town of Union, under a referendum in the act of *Pamph. L.* 1923, *p.* 243. After the election a supplement to the act of *Pamph. L.* 1923, *p.* 243, was passed, as *Pamph. L.* 1925, *p.* 54; that act provides for the election of officers of such city as is required by the act *Pamph. L.* 1908, *p.* 303; said newly elected officers shall hold their respective offices until the hour of noon on the first day of January, nineteen months thereafter, and for the purpose of organizing the government of such city, such election shall be considered the same as the first day of January next following the adoption by popular vote of the act *Pamph L.* 1908, *p.* 303, and such consolidated city shall be governed by the provisions of the act of *Pamph. L.* 1908, *p.* 303, *"and by the other general laws of the state relating to regulating and providing for the government of cities,"* notwithstanding the act *Pamph. L.* 1908, *p.* 303, § 119, provides for a referendum. In this act, there is a provision that all acts and parts of acts inconsistent herewith are to that extent repealed.

The act *Pamph. L.* 1916, *p.* 505, provides that in the Consolidated act it shall be lawful to provide in such act that the provisions of the act *Pamph. L.* 1908, *p.* 303, shall go into effect and become the charter of the city so formed, on a certain date, without submitting the question of the adoption of said act to the voters of such newly formed city, provided the question of consolidating such municipalities be submitted to the voters thereof. This was done.

The act *Pamph. L.* 1923, *p.* 243, did not provide that the act *Pamph. L.* 1908, *p.* 303, should become the charter of the city formed under its provisions, but it did provide in section 17, "the provisions of all general acts relative to the government of cities and the provisions of all the general acts relative to the government of cities of the population of the proposed new city shall apply to cities organized or incorpo-

rated under this act, and wherever any such general act contains a provision" for a referendum, the new city may hold such election, &c., prior to the election preceding the first day of January on which the incorporation may be completed and go into effect. This act (*Pamph. L.* 1923, *p.* 242), went into effect March 20th, 1923; the consolidation was held pursuant to its provisions.

It was completed and the certificate thereof filed October 27th, 1924. At the session of the legislature in 1925 the supplement to the act *Pamph. L.* 1923, *p.* 242, was passed as *Pamph. L.* 1925, *p.* 54. Section 1 of that act provides, such consolidated municipalities shall be governed by the provisions of *Pamph. L.* 1908, *p.* 303, and by the other general laws of the state relating to cities, thus not confining or limiting the consolidated municpalities to the provisions of *Pamph. L.* 1908, *p.* 303.

Then the act *Pamph. L.* 1927, *p.* 48, was passed, repealing several sections of the act *Pamph. L.* 1908, *p.* 303, but it did not repeal section 119 of that act providing for a referendum. As stated above, the act *Pamph. L.* 1927, *p.* 40, amends the act *Pamph. L.* 1908, *p.* 303. The act *Pamph. L.* 1927, *p.* 48, repeals certain designated sections of the act *Pamph. L.* 1908, *p.* 303. The act *Pamph. L.* 1927, *p.* 50, is a supplement to the act of *Pamph. L.* 1908, *p.* 303.

The three acts of 1927 are applicable to all the cities of the state. It will be noted that they are general in form, and so far, they are not in violation of the constitutional mandate. Such is the course of the legislation, as it affects this controversy.

This legislation when tested by the rules approved, followed and laid down for our guidance in the leading cases in our reports must be held to be general laws in fact, and not interdicted or forbidden by our state constitution. Thus, a general law as contradistinguished from one that is special or local is a law that embraces a class of subjects or places and does not omit any subject or place naturally belonging to such a class. *Van Riper* v. *Parsons,* 40 *N. J. L.* 1; so, a law framed in general terms restricted to no locality and operating upon all of a group of objects. *Van Riper* v. *Parsons,*

*Ibid.* 123. So, a law which regulates the internal affairs of counties by providing for the laying out of highways, based upon a valid classification, and which may be put in action alike by all of the class upon which it is based, is a general law.

The constitution does not require that such law shall be uniformly applied. *Noonan* v. *County of Hudson,* 52 *N. J. L.* 398, 402. So, legislation relating solely to the structure and machinery of government. Cities may be classified upon the basis of their population according to the discretion of the legislature. *O'Hanlon* v. *Calvert,* 88 *Id.* 33.

It may be this kind of legislation is unwise, as creating a tangled skein of statutes that is difficult and most perplexing to unravel. It certainly is not a desirable method of changing municipal officials. But, as has been said by this court, where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity of the result, is out of place. It is no province of the courts to supervise legislation, and keep it within the bounds of propriety and common sense. *Douglass* v. *Board of Chosen Freeholders,* 38 *N. J. L.* 214, 216.

Especially is it true that such results ought not to be attempted by holding statutes unconstitutional in doubtful cases and in violation of the well and firmly established rule that an act of the legislature will not be declared void by the courts if its unconstitutionality is in any wise doubtful. *Attorney-General* v. *McGinness,* 78 *N. J. L.* 346, 377; *Hudspeth* v. *Swayze,* 85 *Id.* 592, 609.

The result is the demurrer of the relator to the defendant's plea is overruled and the defendant is entitled to judgment, and such is the order of the court.